**TOSTRUD LAW GROUP, P.C.**
1925 Century Park East, Ste. 2100
Los Angeles, CA. 90067
Tel: (310) 278-2600
Fax: (310) 278-2640
Email: jtostrud@tostrudlaw.com

*Counsel for Plaintiff*

[Additional Counsel on Signature Page]

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT GALBIATI, Derivatively on Behalf of ALPHABET, INC., | Case No.: 4:19-cv-1063 |
| Plaintiff, | |
| v. | **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |
| LARRY PAGE, SERGEY BRIN, ERIC E. SCHMIDT, L. JOHN DOERR, ROGER W. FERGUSON, JR., DIANE B. GREENE, JOHN L. HENNESSY, ANN MATHER, ALAN R. MULALLY, SUNDAR PICHAI, and K. RAM SHRIRAM, | **JURY TRIAL DEMANDED** |
| Defendants, | |
| -and- | |
| ALPHABET, INC., a Delaware corporation, | |
| Nominal Defendant. | |

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT
CASE NO.: 19-cv-1063

Plaintiff Scott Galbiati ("Plaintiff"), by and through his undersigned counsel, derivatively on behalf of Nominal Defendant Alphabet, Inc. ("Alphabet" or the "Company"), submit this Verified Shareholder Derivative Complaint (the "Complaint").  Plaintiff's allegations are based upon his personal knowledge as to himself and his own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by Alphabet with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought in the right, and for the benefit, of Alphabet against certain of its officers and directors seeking to remedy Defendants' breach of fiduciary duties that have caused substantial harm to Alphabet.  Plaintiff seeks to remedy Defendants' violations of state and federal law during the relevant period that have caused and continue to cause substantial monetary losses to Alphabet and other damages, including damages to its reputation and goodwill.

## JURSIDICTION AND VENUE

2.      Pursuant to 28 U.S.C. § 1331 and section 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), this Court has jurisdiction over the claims asserted herein for violations of sections 10(b) and 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.  This Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.

3.      This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District

or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

4. Venue is proper in this Court in accordance with 28 U.S.C. § 1391 because: (i) Alphabet maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to Alphabet, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

### Plaintiff

5. **Plaintiff Scott Galbiati** is a current owner of Alphabet stock and has held the stock during the time of Defendants' continuous wrongful course of conduct alleged herein. Plaintiff will fairly and adequately represent the interests of the shareholders in enforcing the rights of the Company.

### Nominal Defendant

6. **Nominal Defendant** Alphabet, Inc. is incorporated in Delaware, and the Company's principal executive offices are located at 1600 Amphitheatre Parkway Mountain View, CA 94043. Alphabet's securities trade on the NASDAQ under the ticker symbol "GOOG." Alphabet is a collection of businesses -- the largest of which is Google. The Company's largest

source of cash provided by its operations are advertising revenues generated by Google properties and Google Network Members' properties.

**Director Defendants**

7. ***Defendant Larry Page*** ("Page") was, at all relevant times, the Chief Executive Officer, Co-Founder and Director of the Company. Defendant Page is a member of the Executive Committee.

8. ***Defendant Sergey Brin*** ("Brin") was, at all relevant times, the President, Co-Founder and Director of the Company. Defendant Brin is a member of the Executive Committee.

9. ***Defendant Eric E. Schmidt*** ("Schmidt") was, at all relevant times, a Technical Advisor and Director of the Company. Defendant Schmidt is the Chair of the Executive Committee.

10. ***Defendant L. John Doerr*** ("Doerr") was, at all relevant times, a Director of the Company.

11. ***Defendant Roger W. Ferguson, Jr.*** ("Ferguson") was, at all relevant times, a Director. Defendant Ferguson is a member of the Audit Committee.

12. ***Defendant Diane B. Greene*** ("Greene") was, at all relevant times, a Senior Vice President, Chief Executive Officer of Google Cloud, and Director of the Company.

13. ***Defendant John L. Hennessy*** ("Hennessey") was, at all relevant times, Chairman of the Board of the Company. Defendant Hennessy is a member of the Nominating and Corporate Governance Committee.

14. ***Defendant Ann Mather*** ("Mather") was, at all relevant times, a Director of the Company. Defendant Mather is the Chair of the Audit Committee.

15.     **_Defendant Alan R. Mulally_** ("Mulally") was, at all relevant times, a Director of the Company.  Defendant Mulally is a member of the Audit Committee.

16.     **_Defendant Sundar Pichai_** ("Pichai") was, at all relevant times, a Chief Executive Officer of Google, and a Director of the Company.

17.     **_Defendant K. Ram Shriram_** ("Shriram") was, at all relevant times, a Director of the Company.

18.     Defendants Page, Brin, Schmidt, Doerr, Ferguson, Greene, Hennessy, Mather, Mulally, Pichai, and Shriram are herein referred to as the "Director Defendants".

## THE COMPANY'S AUDIT COMMITTEE CHARTER

19.     The Company has an Audit Committee Charter which requires the Audit Committee to exercise vigilance in overseeing the preparation of the Company's' financial statements to be filed with the Securities and Exchange Commission ("SEC") or released publicly to investors.

20.     The Company's Audit Committee Charter states in relevant part:

The purpose of the Audit Committee of Alphabet is to:

Oversee Alphabet's accounting and financial reporting processes, including Alphabet's disclosure controls and procedures and system of internal controls and audits of Alphabet's consolidated financial statements.

Oversee Alphabet's relationship with its independent auditors, including appointing or changing Alphabet's auditors and ensuring their independence.

Provide oversight regarding significant financial matters, including Alphabet's tax planning, treasury policies, currency exposures, dividends and share issuance and repurchases.

*     *     *

Responsibilities

The Audit Committee's main responsibility is to oversee Alphabet's financial reporting process (including Alphabet's disclosure controls and procedures and system of internal controls). The Audit Committee believes that Alphabet's policies and procedures should remain flexible in order to best react to changing conditions and circumstances. The following list includes the Audit Committee's main recurring processes in carrying out its responsibilities. This list is intended as a guide, with the understanding that the Audit Committee can supplement it as appropriate, consistent with the requirements of the SEC and the NASDAQ.

\* \* \*

Internal Controls; Risk Assessment. The Audit Committee will discuss with management and the independent auditors the design, implementation, adequacy and effectiveness of Alphabet's internal controls. The Audit Committee will also meet separately with the independent auditors, with and without management present, to discuss the results of their examinations. The Audit Committee will provide oversight over the system of internal controls, relying upon management's and the independent auditors' representations and assessments of, and recommendations regarding, these controls. The Audit Committee will review any required disclosures regarding Alphabet's internal controls.

The Audit Committee has responsibility for oversight of risks and exposures associated with financial matters, particularly financial reporting, tax, accounting, disclosure, internal control over financial reporting, investment guidelines and credit and liquidity matters, our programs and policies relating to legal compliance and strategy, and our operational infrastructure, particularly reliability, business continuity, capacity, security, and data privacy, including cybersecurity. The Audit Committee shall provide regular reports to the full Board of Directors. In order to facilitate this review, the Audit Committee shall meet in executive session with key management personnel and representatives of outside advisors as required.

## BACKGROUND

21.     The Company was incorporated in 2015 and is the parent company of its leading subsidiary Google Inc. ("Google"), among others.  Google was founded in 1998.  Alphabet and Google are headquartered in Mountain View, California.  The Company's common stock trades on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol "GOOG."

22.     Alphabet, through its subsidiary Google, operates a social networking website called "Google+" that allows people to communicate with their family, friends, and coworkers.

Google+ users ostensibly have the ability to share and restrict the sharing of personal information according to their preferences by changing privacy settings.

23.     Between 2015 and March 2018, a software glitch in the Google+ website permitted outside developers to access the personal profile data of Google+ members who had not opted to permit their data to be shared publicly.  Defendants discovered this glitch in March 2018, ran tests to determine the impact of the glitch, and determined that the data of nearly half of a million users had been exposed to third parties.  Google's legal and policy staff drafted a memorandum regarding the security failure and shared it with senior executives. The memorandum warned that disclosing the incident would likely trigger "immediate regulatory interest."  Google's CEO, Defendant Pichai, was briefed on the plan not to notify users after an internal committee had reached that decision.

24.     Throughout the Relevant Period, Defendants repeatedly made materially false and misleading statements regarding the security failure affecting users personal data.  Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company's security measures had failed recently and massively, as Google had exposed the private data of hundreds of thousands of users of Google+ to third parties; (ii) damage to the Company's reputation and operating results and loss of customers from this failure of the Company's security measures were imminent and inevitable; (iii) the Company's security protections did not shield personal user data against theft and security breaches; and (iv) the Company's security measures had been breached due to employee error, malfeasance, system errors or vulnerabilities.

25.     On October 8, 2018, citing "people briefed on the incident and documents reviewed," *The Wall Street Journal* reported that in March 2018, Google discovered a software glitch in its Google+ social network that had exposed users' personal data to third parties, but

"opted not to disclose the issue . . . in part because of fears that doing so would draw regulatory scrutiny and cause reputational damage."  Following this news, Google's stock price fell $67.75 per share, or 5.9%, over the following two trading sessions, to close at $1,081.22 per share on October 10, 2018.

26.     As a result of these wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, the Company has suffered significant losses and damages.

## THE FALSE AND MISLEADING STATEMENTS

27.     On February 1, 2018, Defendants caused the Company to issue its SEC Annual Report on Form 10-K for the fiscal year ending December 31, 2017 (the "1Q 2017 10-K"), in which the Company stated, in Part I, Item 1A "Risk Factors":

> Privacy concerns relating to our technology could damage our reputation and deter current and potential users or customers from using our products and services. If our security measures are breached resulting in the improper use and disclosure of user data, or if our services are subject to attacks that degrade or deny the ability of users to access our products and services, our products and services may be perceived as not being secure, users and customers may curtail or stop using our products and services, and we may incur significant legal and financial exposure.

> From time to time, concerns have been expressed about whether our products, services, or processes compromise the privacy of users, customers, and others. Concerns about our practices with regard to the collection, use, disclosure, or security of personal information or other privacy related matters, even if unfounded, could damage our reputation and adversely affect our operating results.

> Our products and services involve the storage and transmission of users' and customers' proprietary information, and theft and security breaches expose us to a risk of loss of this information, improper use and disclosure of such information, litigation, and potential liability. Any systems failure or compromise of our security that results in the release of our users' data, or in our or our users' ability to access such data, could seriously harm our reputation and brand and, therefore, our business, and impair our ability to attract and retain users. We expect to continue to expend significant resources to maintain state-of the- art security protections that shield against theft and security breaches.

1

\*   \*   \*

2

Our security measures may also be breached due to employee error, malfeasance,
3 system errors or vulnerabilities, including vulnerabilities of our vendors, suppliers,
their products, or otherwise. Such breach or unauthorized access, increased
4 government surveillance, or attempts by outside parties to fraudulently induce
employees, users, or customers to disclose sensitive information in order to gain
5 access to our data or our users' or customers' data could result in significant legal
and financial exposure, damage to our reputation, and a loss of confidence in the
6 security of our products and services that could potentially have an adverse effect
on our business.
7

8

\*   \*   \*

9

10 If an actual or perceived breach of our security occurs, the market perception of the
effectiveness of our security measures could be harmed and we could lose users
11 and customers.

12 28.     On April 23, 2018, Defendants caused the Company to issue its SEC Quarterly

13
Report on Form 10-Q for the period ending March 31, 2018 (the "1Q 2018 10-Q"), in which the
14

Company stated:
15

16 Our operations and financial results are subject to various risks and uncertainties,
including those described in Part I, Item 1A, "Risk Factors" in our Annual Report
17 on Form 10-K for the year ended December 31, 2017, which could adversely affect
our business, financial condition, results of operations, cash flows, and the trading
18 price of our common and capital stock.  There have been no material changes to our
risk factors since our Annual Report on Form 10-K for the year ended December
19 31, 2017.

20

21 29.     On July 23, 2018, Defendants caused the Company to issue its SEC Quarterly

22 Report on Form 10-Q for the period ending June 30, 2018 (the "2Q 2018 10-Q"), in which the

23
Company stated:
24

25 Our operations and financial results are subject to various risks and uncertainties,
including those described in Part I, Item 1A, "Risk Factors" in our Annual Report
26 on Form 10-K for the year ended December 31, 2017, which could adversely affect
our business, financial condition, results of operations, cash flows, and the trading
27 price of our common and capital stock.  There have been no material changes to our
risk factors since our Annual Report on Form 10-K for the year ended December
28 31, 2017.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT
CASE NO.: 19-cv-1063

30.    The statements referenced above were materially false and/or misleading because: (i) the statements failed to disclose that the Company's security measures already had failed recently and massively, as Google had exposed the private data of hundreds of thousands of users of Google+ to third parties; (ii) damage to the Company's reputation and operating results and loss of customers from this failure of the Company's security measures were imminent and inevitable; (iii) the Company did not maintain state-of-the-art security protections, and its protection did not shield personal user data against theft and security breaches; and (iv) the Company's security measures already had been breached due to employee error, malfeasance, system errors or vulnerabilities.

31.    The statements referenced above were false and/or misleading because the Q1 2018 10-Q and 2Q 2018 10-Q did not fairly present, in all material respects, the financial condition and results of operations of the Company for the periods presented therein, for the reasons articulated above.

## THE TRUTH IS REVEALED

32.    On October 8, 2018, citing "people briefed on the incident and documents reviewed," *The Wall Street Journal* reported that in March 2018, Alphabet's subsidiary Google discovered a software glitch in its Google+ social network that had exposed users' personal data to third parties, but "opted not to disclose the issue . . . in part because of fears that doing so would draw regulatory scrutiny and cause reputational damage."  Following this news, Alphabet's stock price fell $67.75 per share, or 5.9%, over the following two trading sessions, to close at $1,081.22 per share on October 10, 2018.

33.    Following revelation of the security breach, Google announced plans to shut down Google+.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT
CASE NO.: 19-cv-1063

34.     As a result of the wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, the Company has suffered significant losses and damages.

**DERIVATIVE ALLEGATIONS**

35.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breaches of fiduciary duties and gross mismanagement by the Director Defendants.

36.     Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and has retained counsel competent and experienced in derivative litigation.

37.     Plaintiff is a current owner of the Company stock and has continuously been an owner of Company stock during all times relevant to the Director Defendants' wrongful course of conduct alleged herein.  Plaintiff understands her obligation to hold stock throughout the duration of this action and is prepared to do so.

38.     During the illegal and wrongful course of conduct at the Company and through the present, the Board consisted of the Director.  Because of the facts set forth throughout this Complaint, demand on the Company Board to institute this action is not necessary because such a demand would have been a futile and useless act.

39.     The Company Board is currently comprised of eleven (11) members – Page, Brin, Schmidt, Doerr, Ferguson, Greene, Hennessy, Mather, Mulally, Pichai, and Shriram.  Thus, Plaintiff is required to show that a majority of the Director Defendants, *i.e.*, six (6), cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.

40.     The Director Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

41.     The Director Defendants (or at the very least a majority of them) cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.  For the reasons that follow, and for reasons detailed elsewhere in this complaint, Plaintiff has not made (and should be excused from making) a pre-filing demand on the Board to initiate this action because making a demand would be a futile and useless act.

42.     Each of the Director Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

43.     Each of the Director Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

44.     Additionally, each of the Director Defendants received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company.

**The Director Defendants Are Not Independent or Disinterested Defendant Page**

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT
CASE NO.: 19-cv-1063

45.     Defendant Page is not disinterested or independent, and therefore, is incapable of considering demand because he (as its CEO) is an employee of the Company who derives substantially all his income from his employment with the Company, making him not independent.  As such, Defendant Page cannot independently consider any demand to sue himself for breaching his fiduciary duties to the Company, because that would expose him to liability and threaten his livelihood.

46.     Defendant Page owns 19,952,558 of the Class B common stock, which is 42.5% of the Class B common stock outstanding shares and has total voting power of 25.9%.

47.     Defendant Page is also a defendant in the securities class action complaint entitled *Wicks v. Alphabet, Inc., et al.*, Case 3:18-cv-06245 (N.D. Cal.) ("Securities Class Action").

**Defendant Brin**

48.     Defendant Brin is not disinterested or independent, and therefore, is incapable of considering demand because he (as its the President and Co-Founder) is an employee of the Company who derives substantially all his income from his employment with the Company, making him not independent.  As such, Defendant Brin cannot independently consider any demand to sue himself for breaching his fiduciary duties to the Company, because that would expose him to liability and threaten his livelihood.

49.     Defendant Page owns 19,290,366 of the Class B common stock, which is 41.1% of the Class B common stock outstanding shares and has total voting power of 25.1%.

**Defendant Schmidt**

50.     Defendant Schmidt is not disinterested or independent, and therefore, is incapable of considering demand because he (as the Company's Technical Advisor) is an employee of the Company who derives substantially all his income from his employment with the Company,

making him not independent.  As such, Defendant Schmidt cannot independently consider any demand to sue himself for breaching his fiduciary duties to the Company, because that would expose him to liability and threaten his livelihood.

51.     Defendant Schmidt's salary in 2015, 2016, and 2017 was $1,254,808, $1,250,000 and $1,250,000, respectively.  In 2015, Defendant Schmidt received a bonus of $6,000,000 and "other compensation" in the amount of $783,370.  In 2016, Defendant Schmidt received "Non-Qualified Deferred Compensation Earnings in the amount of $2,430,685 and "other compensation" in the amount of $629,106.  In 2017, Defendant Schmidt received "Non-Qualified Deferred Compensation Earnings in the amount of $2,798,606 and "other compensation" in the amount of $677,986.

52.     Further, Defendant Schmidt owns 4,283,434 of the Class B common stock, which is 9.1% of the Class B common stock outstanding shares and has total voting power of 5.6%.

**Defendant Pichai**

53.     Defendant Pichai is not disinterested or independent, and therefore, is incapable of considering demand because he (as the Chief Executive Officer of Google) is an employee of the Company who derives substantially all his income from his employment with the Company, making him not independent.  As such, Defendant Pichai cannot independently consider any demand to sue himself for breaching his fiduciary duties to the Company, because that would expose him to liability and threaten his livelihood.

54.     Defendant Pichai's salary in 2015, 2016, and 2017 was $650,000, $650,000 and $650,000, respectively.  In 2015, Defendant Pichai received "stock awards" in the amount of $99,829.142 and "other compensation" in the amount of $150,460.  In 2016, Defendant Pichai received "stock awards" in the amount of $198,695,790 and "other compensation" in the amount

of $372,410.   In 2017, Defendant Pichai received "other compensation" in the amount of $683,557.

**Defendant Greene**

55.     Defendant Greene is not disinterested or independent, and therefore, is incapable of considering demand because she (as Senior Vice President and Chief Executive Officer of Google Cloud) is an employee of the Company who derives substantially all his income from his employment with the Company, making him not independent.  As such, Defendant Greene cannot independently consider any demand to sue himself for breaching his fiduciary duties to the Company, because that would expose her to liability and threaten her livelihood.

56.     Further, Defendant Greene received in "other compensation" an amount of $674,177.

**Defendant Pichai**

57.     Defendant Pichai is not disinterested or independent, and therefore, is incapable of considering demand because he (as its CEO) is an employee of the Company who derives substantially all his income from his employment with the Company, making him not independent.   As such, Defendant Pichai cannot independently consider any demand to sue himself for breaching his fiduciary duties to the Company, because that would expose him to liability and threaten his livelihood.

58.     Defendant Pichai is also a defendant in the Securities Class Action.

**Defendants Ferguson, Mather, and Mulally**

59.     During the Relevant Period, Defendants Ferguson, Mather, and Mulally served as members of the Audit Committee.  Pursuant to the Company's Audit Committee Charter, the members of the Audit Committee are responsible for, *inter alia*, reviewing the Company's

financial statements, press releases, and assuring the adequacy and effectiveness of disclosure controls, ensure ethical compliance, and otherwise meet their responsibilities as set forth in the Audit Committee Charter.

60.     Defendants Ferguson, Mather, and Mulally breached their fiduciary duties of due care, loyalty, and good faith, because the Audit Committee, *inter alia*, allowed or permitted false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and, otherwise, failed to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above.  Therefore, Defendants Ferguson, Mather, and Mulally face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile.

## COUNT I

### Against the Director Defendants for Breach of Fiduciary Duty

61.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

62.     The Director Defendants owe the Company fiduciary obligations.  By reason of their fiduciary relationships, the Director Defendants owed and owe the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

63.     The Director Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

64.     The Director Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties.  Among other things, the Director Defendants breached their fiduciary duties of loyalty and good faith by allowing the Company to improperly misrepresent the Company's publicly reported business performance, as alleged herein.  These actions could not

have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

65.     As a direct and proximate result of the Director Defendants' failure to perform their fiduciary obligations, the Company has sustained significant damages.  As a result of the misconduct alleged herein, the Director Defendants are liable to the Company.

66.     As a direct and proximate result of the Director Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill.  Such damage includes, among other things, costs associated with defending securities lawsuits, severe damage to the share price of the Company, resulting in an increased cost of capital, and reputational harm.

## COUNT II

### Against the Director Defendants for Waste of Corporate Assets

67.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

68.     The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the Relevant Period.  It resulted in continuous, connected, and ongoing harm to the Company.

69.     As a result of the misconduct described above, the Director Defendants wasted corporate assets by, *inter alia*: (i) paying excessive compensation and bonuses to certain of its executive officers; (ii) awarding self-interested stock options to certain officers and directors; and (iii) incurring potentially millions of dollars of legal liability and/or legal costs to defend Defendants' unlawful actions.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT
CASE NO.: 19-cv-1063

70.     As a result of the waste of corporate assets, the Director Defendants are liable to the Company.

71.     Plaintiff, on behalf of Alphabet, has no adequate remedy at law.

## COUNT III

### Against the Director Defendants for Violations of Section 10(b)

### of the Exchange Act and SEC Rule 10b-5

72.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

73.     During the Relevant Period, the Director Defendants disseminated or approved public statements that misrepresented or failed to disclose that (i) the Company's security measures had failed recently and massively, as Google had exposed the private data of hundreds of thousands of users of Google+ to third parties; (ii) damage to the Company's reputation and operating results and loss of customers from this failure of the Company's security measures were imminent and inevitable; (iii) the Company's security protections did not shield personal user data against theft and security breaches; and (iv) the Company's security measures had been breached due to employee error, malfeasance, system errors or vulnerabilities.   Thus, the price of the Company's shares was artificially inflated due to the deception of the Director Defendants.

74.     As such, the Director Defendants caused the Company to violate section 10(b) of the Exchange Act and SEC Rule 10b-5 in that they:

(a)     employed devices, schemes, and artifices to defraud; and

(b)     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

75.     As a result of the Director Defendants' misconduct, the Company is suffering litigation expense and reputational harm in the marketplace in violation of section 10(b) of the Exchange Act and SEC Rule 10b-5.

## COUNT IV

### Against the Director Defendants

### for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9

76.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

77.     SEC Rule 14a-9, promulgated pursuant to section 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.  Specifically, the Company's Proxy violated section 14(a) of the Exchange Act and SEC Rule 14a-9 because it included materially false and misleading information and failed to disclose (i) the Company's security measures had failed recently and massively, as Google had exposed the private data of hundreds of thousands of users of Google+ to third parties; (ii) damage to the Company's reputation and operating results and loss of customers from this failure of the Company's security measures were imminent and inevitable; (iii) the Company's security protections did not shield personal user data against theft and security breaches; and (iv) the Company's security measures had been breached due to employee error, malfeasance, system errors or vulnerabilities.

78.     The Director Defendants caused the 2018 Proxy Statement to be false and misleading regarding the executive compensation.  For example, the 2014-2018 Proxy Statement

purported to employ a "pay-for-performance process" while failing to disclose that the Company's financial prospects were misrepresented as a result of false and misleading statements.

79. In the exercise of reasonable care, the Director Defendants should have known that the statements contained in the Proxy were materially false and misleading.

80. The misrepresentations and omissions in the Proxy were material to Company stockholders in voting on the matters set forth for stockholder ratification in the Proxy. The Proxy was an essential link in the accomplishment of the continuation of these defendants' continued violation of their fiduciary duties.

81. The Company was damaged as a result of these defendants' material misrepresentations and omissions in the Proxy.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(A) Declaring that plaintiff may maintain this action on behalf of the Company and that Plaintiff is an adequate representative of the Company;

(B) Finding Defendants liable for breaching their fiduciary duties owed to the Company;

(C) Directing Defendants to take all necessary actions to reform and improve the Company's corporate governance, risk management, and internal operating procedures to comply with applicable laws and to protect the Company and its stockholders from a repeat of the rampant wrongful conduct described herein;

(D) Awarding Plaintiff the costs and disbursements of this action, including attorneys', accountants', and experts' fees; and

(E) Awarding such other and further relief as is just and equitable.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT
CASE NO.: 19-cv-1063

1

## **JURY TRIAL DEMANDED**

2      Plaintiff hereby demands a trial by jury.

3

4   Dated:  February 26, 2019                      By: /s/ Jon A. Tostrud

5                                                      Jon A. Tostrud, Esq.
                                                     **TOSTRUD LAW GROUP, P.C.**
6                                                    1925 Century Park East, Ste. 2100
                                                     Los Angeles, CA. 90067
7                                                    Tel: (310) 278-2600
                                                     Fax: (310) 278-2640
8                                                    Email: jtostrud@tostrudlaw.com

9
                                                     **GAINEY McKENNA & EGLESTON**
10                                                   Thomas J. McKenna
                                                     Gregory M. Egleston
11                                                   440 Park Avenue South, 5th Floor
                                                     New York, NY 10016
12                                                   Tel: (212) 983-1300
                                                     Fax: (212) 983-0383
13                                                   Email: tjmckenna@gme-law.com
                                                     Email: gegleston@gme-law.com
14

15
                                                     *Attorneys for Plaintiff*
16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT
CASE NO.: 19-cv-1063

## **VERIFICATION**

I, Scott Galbiati, declare that I have reviewed the Verified Shareholder Derivative Complaint ("Complaint") prepared on behalf of Alphabet, Inc. and authorize its filing. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true. I further declare that I am a current holder, and have been a holder, of Alphabet, Inc. common stock at all relevant times.

SCOTT GALBIATI

1